UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13-cv-00087-MOC-DLH

| | |
|---|---|
| **KIMBERLY J. MCKINNISH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF DECISION |
| Vs. ) | And ORDER |
| ) | |
| **PATRICK R. DONAHOE,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment. The motion has been thoroughly briefed and oral arguments were heard August 10, 2014. For the reasons that follow and for the reasons set forth in the defendant's brief in support and reply brief, summary judgment will be granted and this case dismissed.

## FINDINGS and CONCLUSIONS

### I. Background

At all times relevant to this action, plaintiff was a fill-in mail carrier employed by the United States Postal Service at its West Asheville station. Plaintiff contends that her route supervisor, David Duncan ("Duncan"), sexually harassed her by forcing her to engage in an exchange of sexually explicit text messages and pictures for 10 months in 2010. Plaintiff never brought such conduct to the attention of Duncan's supervisor, who was present at the West Asheville station, or otherwise availed herself of the postal services' written sexual harassment procedures. The inappropriate conduct only ended -- and ended immediately -- when plaintiff's husband discovered the texts and brought them to the attention of the local postmaster. After the postal service investigated the allegations, Duncan's employment was terminated by the

1

postmaster in little more than two months; however, Duncan ultimately received a lesser punishment when he appealed the termination to the Merit System Protection Board, which downgraded his position, assigned him to another location, and placed him on probation.

Defendant has moved for summary judgment contending that plaintiff's failure to report the harassment was unreasonable; that Duncan does not qualify as a "supervisor" under current law; and that because defendant had in place an effective anti-harassment policy, it is entitled to dismissal in accordance with its affirmative defense. Plaintiff contends that summary judgment is not appropriate because she failed to report the conduct based on fear of retaliation; that Duncan was a supervisor as he controlled her work hours and routes; and that defendant is not entitled to avail itself of its affirmative defense under Faragher, infra, as the anti-discrimination policy was not effective.

## II. Summary Judgment Standard

Rule 56 was amended to give parties a "roadmap" for seeking and responding to a request for summary judgment. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for a party to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (1) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

> information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material

3

facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

**III.    Discussion**

Defendant contends, *inter alia*, that the postal service is, like other corporations, protected from liability under Title VII because: it had in place a written policy prohibiting workplace harassment or discrimination; that it took immediate steps to investigate plaintiff's allegations once they were made; that such investigation was adequate; and that Duncan was plaintiff's co-worker and not plaintiff's supervisor under current case law.

4

### A. Hostile Work Environment Claim

Title VII prohibits practices that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment ... Such discrimination includes maintaining a ... hostile work environment." Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir.2006). "To state a hostile work environment claim, [Plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir.2003).

> The 'severe or pervasive' element of a hostile work environment claim has both subjective and objective components. First, the plaintiff must show that [s]he subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive.

EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir.2008) (internal quotations and citations omitted). The Fourth Circuit has found that this is a high bar and that a plaintiff must

> identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere.

Id. at 316 (internal quotations omitted); see also EEOC v. Fairbrook Medical Clinic, 609 F.3d 320, 328–29 (4th Cir.2010) (denying summary judgment where supervisor targeted plaintiff with highly personalized comments about her breasts and sex drive designed to demean and humiliate her in front of co-workers and the public); Mosby–Grant v. City of Hagerstown, 630 F.3d 326, 336 (4th Cir.2010) (denying summary judgment where plaintiff showed that repeated comments about sexual encounters with young women and constant demeaning remarks about women

5

caused her significant emotional distress). A totality of the circumstances test is applied when evaluating the question of whether alleged harassment altered the conditions of employment.

Critical to the inquiry is whether the alleged harasser is a co-worker or a supervisor. Here, plaintiff contends that Duncan was her supervisor. In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court determined that if the harasser is a supervisor who takes a tangible employment action against the employee victim, then the employer can be held to be vicariously liable for that supervisor's actions. Id. Where the harasser is a supervisory employee who does not take a tangible employment action against the employee, then the employer could still be vicariously liable, with such liability subject to the employer's assertion of an affirmative defense that the employer took reasonable care to prevent and correct any harassment and the plaintiff failed to take advantage of those opportunities. Id. at 87. Where the alleged harasser is not a supervisory employee, Faragher provides that such employee is a co-worker and plaintiff must come forward with evidence that the employer was negligent "with respect to the offensive behavior." Vance v. Ball State University, __ U.S. __, 133 S.Ct. 2434, 2241 (2013).

Thus, the first consideration for this court is whether Duncan was plaintiff's supervisor or merely a co-worker, which is a question of law. Id. In Vance, the Supreme Court significantly limited the definition of Title VII "supervisor" to those agents of the employer who have the authority to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance, 133 S. Ct. at 2444. If the alleged harasser is a coworker of the plaintiff, liability attaches to the employer if the employer was "negligent in controlling the working conditions" id.; however, if the harasser was plaintiff's supervisor and the supervisor's harassment "culminates in a tangible employment action," the employer is strictly

liable." Id. (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Where the alleged harasser is the supervisor, but the harassment does not culminate in a tangible employment action, liability will not attach if the employer can establish an affirmative defense that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided. Id. at 2439. Plaintiff has presented evidence that Duncan's position was titled "route supervisor" and that he had the authority to assign employees "good routes" or "bad routes" and, since she was a fill-in employee, Duncan also had the ability to impact the number of hours plaintiff worked each week. The situation presented here is not unlike the situation addressed in Vance: there, plaintiff was a catering assistant who alleged that she had been repeatedly harassed by a catering specialist, Davis, who was given leadership responsibilities and led or directed the work of Vance and other employees in defendant's kitchen. Id. at 2454. The parties in Vance also agreed that Davis had no authority to hire, fire, promote, transfer, or discipline plaintiff.

This leaves this court with a question unaddressed by Vance, which is whether a person who has the ability to determine the number of hours a person works during a week is person who can bring about a "significant change in employment status …. [or] benefits." Id. at 2444.[1] The use of the term "supervisor" or "manager" is not controlling for purposes of Title VII. See Vance, 133 S.Ct. at 2444–46 (observing that "the term 'supervisor' has varying meanings both in colloquial usage and in the law" and for that reason a court cannot rely on the term's general usage for determining who is a supervisor under Title VII). In this case, Duncan's title was

---

[1] The ability to assign good routes versus bad routes does not amount to the ability to effectuate a "reassignment with significantly different responsibilities," as it is undisputed that all mail carriers were expected to deliver the mail on walking routes or riding routes. In any event, what constitutes a "good" route is inherently subjective.

7

"route supervisor," which implies supervising routes as opposed to personnel; however, Vance provides that courts should not rely on titles. While a co-employee may have been the plaintiff's "'supervisor' in the colloquial sense of the word, [he] did not possess the authority that would make him a supervisor for purposes of Title VII." Andonissamy v. Hewlett–Packard Co., 547 F.3d 841, 848 (7th Cir.2008).[2]

Instead, the court has concentrated on plaintiff's most compelling arguments, which that Duncan's ability to determine the number of hours she worked each week made him her supervisor. Post-Vance, the issue of the ability to control the number of hours has been addressed infrequently by other trial courts; pre-Vance, courts had the opportunity to consider whether the ability to control hours made a person a supervisor. First, in Pfau v. Reed, 125 F.3d 927, 937 (5th Cir.1997), cert. granted and judgment vacated (for reconsideration in light of Faragher v. City of Boca Raton, supra), 525 U.S. 801(1998), the Fifth Circuit concluded that a fellow employee was not a supervisor where the only authority he had was to "recommend that employees receive awards or be subject to disciplinary action [and] ... to issue assignments to [employees] and **determine the number of hours allocated to each assignment**[, and] ... had no[ ] significant input in the decision to fire [plaintiff even though he was] instrumental and mainly responsible for the proper procedural handling of the termination plaintiff." Id. (emphasis added). While such decision is no longer good law under Vance or Faragher, it is instructive as to how the ability to control work hours has been viewed.

Post-Vance, the courts that have addressed similar issues have determined that similarly situated co-workers with the ability to control hours worked were not supervisors. First, in McCafferty v. Preiss Enterprises, Inc., 2013 WL 4055480, *4 (10th Cir. Aug. 13, 2013), an

---

[2] While Seventh Circuit decisions are not binding in the Fourth Circuit, Vance originated from the Seventh Circuit and the Supreme Court adopted the definition of "supervisor" used by that court. Thus, the opinion in Andonissamy is instructive.

unpublished decision, a panel of the Tenth Circuit Court of Appeals held that a shift manager with the power to schedule employees to different shifts and hours was not a supervisor within the meaning of Vance.[3] Second, in Spencer v. Schmidt Elec. Co., 2014 WL 3824339 (5th Cir. Aug. 5, 2014), an unpublished *per curiam* decision, the Fifth Circuit Court of Appeals held that evidence tending to show that a co-worker was "authorized to direct the employee's daily work activities" was "the definition of supervisor expressly rejected by the Supreme Court." Id. at *4 (citation omitted). While not binding, these decisions are helpful to this court.

Ultimately, the intent in Vance was to take the guess work out of determining who is and who is not a supervisor capable of creating vicarious liability for his or her employer. Indeed, the Court held that under its new standard, such matter "will generally be capable of resolution at summary judgment." Id. at 2449. Applying the standard set forth in Vance to the facts of this case, the court concludes, as a matter of law, that Duncan was not plaintiff's supervisor within the meaning of Title VII as none of the evidence submitted shows that Duncan was empowered to take *tangible* employment actions against plaintiff. While at first blush the ability to assign hours may appear to be tangible, the impact of that ability is tempered where, as here, Duncan's immediate supervisor, Ms. Clayton, was present at the West Asheville station since at least mid-June 2010. Indeed, plaintiff's argument that vicarious liability should attach based on the ability to control an employee's hours (either overtime or regular work hours) or an employee's assignments within their job description, would unnecessarily reintroduce the subjectivity Vance intended to eliminate and ensnare untold numbers of low-level employees who, despite being given some discretion, merely schedule and direct other employees' daily activities.

---

[3] A different panel of the same court performed the same analysis as that conducted in McCafferty, but reached a different conclusion. See Kramer v. Wasatch County Sheriff's Office, 743 F.3d 726 (10th Cir. 2014). The parties did not cite or argue Kramer, a published decision.

Having first determined that the alleged harassment was by a co-worker rather than a supervisor, the burden is now plaintiff's to come forward with evidence upon which a jury could find that the postal service was negligent in controlling the working conditions at the West Asheville Post Office. Vance, 133 S. Ct. at 2444. To meet this standard, plaintiff must prove the employer "knew or should have known about the [harassing] conduct and failed to stop it." Burlington Industries, Inc. v. Ellerth, 524 U.S. at 759. In this case, it is undisputed that plaintiff *never* told the postmaster of allegedly harassing behavior of Duncan and that the postmaster first knew of the activities when the plaintiff's husband discovered the texts and reported them to the employer. It is equally undisputed that the postmaster took immediate and significant action to both investigate the complaint and, ultimately, to discipline Duncan.

In the Fourth Circuit, "a good faith investigation of alleged harassment may satisfy the 'prompt and adequate' response standard, even if the investigation turns up no evidence of harassment." Harris v. L & L Wings, Inc., 132 F.3d 978, 984 (4th Cir. 1997) (citing Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752, 754 (11th Cir.1996)). In this case, plaintiff presented no evidence that the investigation was a sham or that it was not intended to uncover the truth concerning the allegations of sexual harassment. Jordan v. Donahoe, 2013 WL 3893532 (E.D. Va. July 26, 2013), aff'd, 2014 WL 57775 (4th Cir. Jan. 8, 2014). Because plaintiff has failed to present evidence upon which a jury could find the postmaster or the postal service was negligent in controlling the working conditions at the West Asheville Post Office, plaintiff's Title VII hostile work environment claim fails as a matter of law.

### B. *Quid Pro Quo* Harassment

Plaintiff may also have asserted a claim for *quid pro quo* harassment, which is defined as "harassment in which a supervisor demands sexual consideration in exchange for job benefits,"

Katz v. Dole, 709 F.2d 251, 254 (4th Cir.1983), see also Spencer v. General Electric Co., 894 F.2d 651, 658 (4th Cir.1990). In such a claim, the supervisory harasser conditions employment benefits on the employee's submitting to the sexual advances or threatening adverse employment actions if the employee does not submit. Tomkins v. Public Serv. Elec. & Gas Co., 568 F.2d 1044 (3d Cir.1977). "Benefits" may include the taking of adverse employment action against an employee who refuses to submit to the supervisor's sexual advances. Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554 (11th Cir.1987). While plaintiff points to route assignments and being told to report late, route assignment was not a tangible aspect of her employment as she and others were expected to complete either assignment and accepting that reporting late could have impacted her hours, plaintiff testified that during the period of alleged harassment, she received a full complement of hours and even overtime and that she never made so much money as she did in 2010.

In the end, however, plaintiff's *quid pro quo* claim fails for the same reason her hostile work environment claim fails: Duncan was not a supervisor as a matter of law, an essential element of a *quid pro quo* claim. Recently, the Court of Appeals for the Fifth Circuit held in a persuasive albeit unpublished opinion that the standards for determining who is a supervisor under Vance are to be applied in *quid pro quo* cases as well. Hague v. University of Texas Health Science Center at San Antonio, *2 (5th Cir. 2014).

IV. **Conclusion**

While in no manner condoning the alleged actions of Duncan in a workplace that should be free of harassment or discrimination, plaintiff's claims cannot survive summary judgment as Duncan was not plaintiff's supervisor and the postal service has in place an effective written policy that swiftly dealt out discipline to Duncan once the misconduct was brought to the

attention of management at the West Asheville station. Although not part of the Vance analysis, the court found most informative the reaction of Duncan's supervisor, Ms. Clayton, when she learned of his misconduct: plaintiff testified that Ms. Clayton was angry with her not for reporting Duncan's conduct but for not reporting it earlier, and asked "[w]hy didn't you come to me?" The court finds that this case is precisely why the Faragher defense came about: an employer should not be held liable where an employee fails to take advantage of a facially effective plan aimed at making the workplace free of harassment. Plaintiff's fear of retaliation was without any plausible basis, especially where, as here, plaintiff was confident enough to meet with Ms. Clayton on an unrelated personnel matter earlier that year. Def. Ex. 12 at pp. 1-2. Indeed, there was some evidence that plaintiff was familiar with the postal service's policy as she had filed an earlier EEO claim. Finding that no genuine issues of fact remain for trial and that defendant is entitled to judgment as a matter of law, the court enters the following order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#24) is **GRANTED**, and the Clerk of Court shall enter judgment in favor of defendant and against plaintiff providing that plaintiff have and take nothing of this defendant, and this action is **DISMISSED** with prejudice.

Signed: August 15, 2014

Max O. Cogburn Jr.
United States District Judge